United States Court of Appeals
Fifth Circuit

**F I L E D**

**March 23, 2006**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 05-60465

Summary Calendar

_____

ANAND BABO; HAMAN BABO

Petitioners

v.

ALBERTO R GONZALES, U S ATTORNEY GENERAL

Respondent

_____

Petition for Review of an Order of the
Board of Immigration Appeals,
BIA No. A79 556 429; BIA No. A79 556 431

_____

Before KING, BARKSDALE, and BENAVIDES, Circuit Judges.

PER CURIAM:[*]

Anand Babo and his son, Haman Babo, petition this court for
review of an order from the Board of Immigration Appeals ("BIA")
affirming the decision of the Immigration Judge ("IJ") to deny
their applications for asylum, withholding of removal, and
protection under the Convention Against Torture ("CAT").  By

_____

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

-1-

separate motion carried with the case, the Babos contend, in the alternative, that this case should be transferred to the district court as a habeas corpus petition pursuant to 28 U.S.C. § 2241 if this court determines that it lacks jurisdiction over the appeal. For the following reasons, we DISMISS the petition for review insofar as it seeks review of the Babos' asylum claim and DENY the balance of the petition for review and the accompanying motion.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

Petitioners Anand Babo and his son, Haman Babo, were both born in Karachi, Pakistan.  They entered the United States together as temporary visitors on July 21, 2000, and were authorized to remain only until January 19, 2001.  Both men remained in the United States past that date without explicit authorization from the Immigration and Naturalization Service ("INS").[1]  The DHS issued separate Notices to Appear on March 10, 2003 and filed with the immigration court in Dallas, Texas, on April 1, 2003, to commence removal proceedings against the Babos

---

[1]   As of March 1, 2003, the INS's administrative, service, and enforcement functions were transferred from the Department of Justice to the new Department of Homeland Security ("DHS").  See Homeland Security Act of 2002, Pub. L. No. 107-296, §§ 441, 451, 471, 116 Stat. 2135 (2002).  The Bureau of Immigration and Customs Enforcement ("BICE") in the DHS assumed the INS's detention, removal, enforcement, and investigative functions.  See Peters v. Ashcroft, 383 F.3d 302, 304 n.1 (5th Cir. 2004).  Because the removal proceedings in this case began after the reorganization, we will henceforth refer to the current agencies in this opinion for the sake of accuracy.

as nonimmigrants that remained in the United States for a time longer than permitted under section 237(a)(1)(B) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1227(a)(1)(B).[2]  The Babos filed their asylum applications in open court on October 9, 2003, long after the one-year limitation on filing under section 208(a)(2)(B) of the INA, 8 U.S.C. § 1158(a)(2)(B), had lapsed.

On January 5, 2004, the IJ conducted a consolidated removal hearing and issued a written order and decision that (1) denied the petitioners' requests for asylum relief as time-barred and (2) rejected the petitioners' claims for withholding of removal and protection under the CAT.  Notwithstanding Anand Babo's generalized assertions during his testimony that the situation had worsened since leaving Pakistan in July of 2000, the IJ determined that the evidence in the record demonstrated that the basis of his fear of mistreatment if he returned to Pakistan already existed at the time he arrived in July of 2000.  Thus, the IJ found that the petitioners' were bound by the one-year limitation on filing.

The IJ next addressed the withholding of removal and CAT claims.  The IJ acknowledged that, as practicing Hindus, the Babos are indeed a religious minority in their Muslim-dominated

---

[2]  The petitioners conceded removability on this ground and petition this court to review only the BIA's affirmance of the IJ's denial of asylum, withholding of removal, and CAT relief.

native country of Pakistan. When tensions escalated between Hindus and Muslims in Pakistan following the destruction of the Babri Mosque in December of 1992, Anand Babo testified that he was particularly targeted and threatened because he was purportedly the secretary of a Hindu graveyard that certain Muslim shopkeepers were encroaching upon. Although Anand Babo testified that he was shot at by these Muslim individuals in 2000 and allegedly reported the incident to the authorities,[3] the IJ noted that this incident was neither included in his handwritten affidavit nor corroborated by any documentary evidence in the record.[4] Moreover, the IJ also found a discrepancy with a document that supposedly certified that Anand Babo was an active member in the Hindu community and joint secretary of a particular Hindu organization.

After carefully reviewing the evidence, the IJ determined that, even putting aside some of his doubts about the credibility of Anand Babo's testimony, the alleged acts of persecution against him seemed to have arisen in response to a real estate dispute over the cemetery plot, rather than on account of his religion. Thus, the IJ found that the Babos had failed to

[3] Anand Babo also testified that the police did not take any specific action following his report.

[4] Besides expressing a general familiarity with the Hindu-Muslim conflict in Pakistan and a preference for continuing his education in the United States, Haman Babo's testimony largely tracked that of his father.

-4-

establish a clear probability of persecution on the basis of religion if they returned to Pakistan and accordingly denied their requests for withholding of removal. The IJ similarly rejected the CAT claims because the petitioners had failed to demonstrate how the police were supposed to know who to arrest based on the limited information from Anand Babo following the alleged shooting incident in 2000. Despite denying all requests for protective relief, the IJ granted voluntary departure to the Babos with specific instructions to leave the United States on or before March 5, 2004.

On April 29, 2005, the BIA adopted and affirmed the decision of the IJ. The Babos timely filed a petition for review of the BIA's decision.[5]

## II. DISCUSSION

First, we lack jurisdiction to review the Babos' asylum claims because the BIA adopted the IJ's conclusion that those claims were time barred. <u>See</u> 8 U.S.C. § 1158(a)(3) ("No court shall have jurisdiction to review any determination of the Attorney General under paragraph (2)."); <u>see also</u> <u>Nugroho v.</u>

---

[5] A panel from this court denied the petitioners motion for a stay of deportation on July 14, 2005. The BIA subsequently denied the petitioners' motion to reopen on July 21, 2005, and further ordered that they would be barred from applying for adjustment of status pursuant to section 240B(d) of the INA, 8 U.S.C. § 1229c(d). The petitioners have not challenged these orders in the instant appeal, which would have otherwise been consolidated with this appeal. <u>See</u> 8 U.S.C. § 1252(b)(6); <u>Roy v. Ashcroft</u>, 389 F.3d 132, 136 n.3 (5th Cir. 2004).

-5-

Gonzales, No. 04-60248, 2006 WL 319267, at *1 (5th Cir. Feb. 13, 2006) (citing Zhu v. Ashcroft, 382 F.3d 521, 527 (5th Cir. 2005)). The IJ determined that the basis for Anand Babo's fear of persecution upon a return to Pakistan already existed when he arrived in the United States in July of 2000. Thus, the IJ determined that the Babos failed to demonstrate "either the existence of changed circumstances which materially affected [their] eligibility for asylum or extraordinary circumstances relating to the delay in filing" necessary to overcome the one-year limitation. 8 U.S.C. § 1158(a)(2)(B),(D). Accordingly, this court must dismiss the petitioners' asylum claims for lack of jurisdiction.[6]

We retain jurisdiction to review the withholding of removal and CAT claims.[7] See 8 U.S.C. § 1252; Roy, 389 F.3d at 137.

---

[6] In their reply brief and accompanying motion to transfer, the petitioners urge that this court has jurisdiction to consider the timeliness of their asylum claim following the passage of the REAL ID Act, Pub. L. 109-13, 119 Stat. 231 (May 11, 2005). See 8 U.S.C. § 1252(a)(2)(D) (providing for judicial review of "constitutional claims or questions of law raised upon a petition for review"). Following the passage of the REAL ID Act, however, previous panels of this court have noted that this provision does not preserve jurisdiction over an IJ's determination of the timeliness of an asylum application. See, e.g. Nugroho, 2006 WL 319267, at *1; Bregu v. Gonzales, No. 05-60697, 2006 WL 237949, at *1 (5th Cir. Jan. 31, 2006); Maredia v. Gonzales, No. 04-60847, 2005 WL 3505398, at *1 (5th Cir. Dec. 23, 2005) ("We cannot review whether the petitioner's application for asylum was timely filed or whether an exception to the one-year filing requirement applied.").

[7] Because we have jurisdiction to review the remaining withholding of removal and CAT claims, we deny the petitioners' motion to transfer the case to the district court as a habeas

"Withholding of removal is a higher standard than asylum." <u>Efe</u> <u>v. Ashcroft</u>, 293 F.3d 899, 906 (5th Cir. 2002). The petitioners must prove a "clear probability of persecution" based on their religion or some other enumerated ground upon removal to Pakistan. <u>INS v. Stevic</u>, 467 U.S. 407, 413 (1984); <u>see also</u> 8 U.S.C. § 1231(b)(3)(A); <u>Efe</u>, 293 F.3d at 906. We review the BIA's conclusion on such claims for substantial evidence. <u>See</u> <u>Chun v. INS</u>, 40 F.3d 76, 78 (5th Cir. 1994). Under substantial evidence review, we will reverse the BIA only "when the evidence is 'so compelling that no reasonable fact finder could fail to find' the petitioner statutorily eligible for relief." <u>Roy</u>, 389 F.3d at 138 (quoting <u>INS v. Elias-Zacarias</u>, 502 U.S. 478, 483-84 (1992)). Moreover, "[w]e cannot substitute our judgment for that of the BIA or IJ with respect to the credibility of the witnesses or ultimate factual findings based on credibility determinations." <u>Chun</u>, 40 F.3d at 78; <u>see also</u> <u>Efe</u>, 293 F.3d at 903 (noting that courts afford "great deference to an immigration judge's decisions concerning an alien's credibility").

As practicing Hindus, the Babos allegedly fear persecution on the basis of their religion if removed to Pakistan, which remains a predominantly Muslim country. Given the lack of

_____

corpus petition pursuant to 28 U.S.C. § 2241. <u>See</u> <u>Rosales v. Bureau of Immigration and Customs Enforcement</u>, 426 F.3d 733, 736 (5th Cir. 2005) (discussing the effect of the REAL ID Act and noting that this court is the "exclusive forum" for petitioners to challenge removal orders).

documentary evidence to support Anand Babo's testimony about the alleged shooting incident in 2000 and lingering questions over the veracity of a particular piece of evidence, however, the IJ drew an adverse credibility determination about the existence of past persecution and concluded that the petitioners had failed to demonstrate a clear probability of persecution on the basis of their Hindu beliefs if removed to Pakistan.  The IJ also determined that the harassment was at least partially motivated by a real estate dispute over the cemetery land, rather than simply animosity toward the Babos because they were Hindus.  Even under a mixed motive analysis, the petitioners must still present evidence "of such weight that it compels the fact-finder to conclude that the applicant suffered past persecution or has a well-founded fear of future persecution <u>on account of a protected ground</u>." <u>Girma v. INS</u>, 283 F.3d 664, 668 (5th Cir. 2002) (finding the BIA's denial withholding of removal relief to be consistent with a mixed motive analysis) (emphasis added). Therefore, we conclude that the BIA's affirmance of the IJ's decision to deny withholding of removal relief was supported by substantial evidence in the record.

Finally, we separately address the remaining CAT claims because such claims are distinct "from the claims for asylum and withholding of removal and should receive separate analytical attention." <u>Efe</u>, 293 F.3d at 906-07.  CAT claims differ from asylum and withholding of removal in two principal respects: (1)

-8-

CAT claims require a showing of the "higher bar" of torture, rather than persecution; and (2) CAT regulations do not require the torture to fall within one of the enumerated grounds for withholding of removal.  Id.  The applicant must demonstrate "that it is more likely than not that he or she would be tortured if removed to the proposed country of removal."  Id. (quoting 8 C.F.R. § 208.16(c)(2)).  Because of the sketchy details surrounding the alleged police indifference following the shooting and the aforementioned credibility doubts surrounding the testimony, the IJ concluded that the petitioners had not established the requisite likelihood of torture upon removal to Pakistan.  Thus, we conclude that the BIA's decision to affirm the IJ's denial of CAT protection was supported by substantial evidence.

## III.  CONCLUSION

For the foregoing reasons, we DISMISS the petition for review insofar as it seeks review of the denial of asylum and we DENY the balance of the petition for review and the accompanying motion to transfer.